JOYCE DVORAK, PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID DVORAK, DECEASED, APPELLEE AND CROSS-APPELLANT, V. BUNGE CORPORATION, A NEW YORK CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, LAUHOFF GRAIN COMPANY, AN ILLINOIS CORPORATION, APPELLEE, AND HAROLD K. SCHOLZ COMPANY, A NEBRASKA CORPORATION, THIRD-PARTY DEFENDANT, APPELLEE AND CROSS-APPELLEE.

590 N.W. 2d 682

Filed March 5, 1999.    No. S-97-791.

Melvin C. Hansen and Julie M. Martin, of Hansen, Engles & Locher, P.C., for appellant.

Patrick W. Healey and William A. Wieland, of Healey & Wieland Law Firm, for appellee Dvorak.

Brien M. Welch and Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Scholz Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## NATURE OF CASE

This opinion addresses an appeal filed by Bunge Corporation (Bunge) and a cross-appeal by Joyce Dvorak (Dvorak), personal representative of the estate of David Dvorak, deceased, regarding summary judgments entered in favor of Harold K. Scholz Company (Scholz).

## SCOPE OF REVIEW

The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of that of

the trial court. *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998).

It not only is within the power, but it is the duty of an appellate court to determine whether the appellate court has jurisdiction over the matter before it. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). When lack of jurisdiction is apparent on the face of the record, yet the parties fail to raise it, it is the duty of a reviewing court to raise and determine the issue of jurisdiction sua sponte. *Id.*

## FACTUAL BACKGROUND

In 1987, Lauhoff Grain Company (Lauhoff) began renovating the electrical power distribution system at its Crete Mills facility. Over the Labor Day weekend, the plant shut down in order to connect the new power distribution equipment. Scholz had been contracted by Lauhoff to assist in the renovation, and Scholz employees were working at Crete Mills during the Labor Day weekend shutdown.

As part of the renovation, Lauhoff decided to remove an old high-voltage disconnect that powered a lighting transformer and replace it with an updated high-voltage disconnect. In order to join the lighting transformer to the new disconnect, new power wires were installed. The new wires were fed through an existing 2-inch conduit that ran across the electrical vault room. The 2-inch conduit crossed an abandoned 3-inch conduit that ran out of the room and into the "E track area." In the process of removing the old disconnect, the grounding point to the 2-inch conduit was removed. The 2-inch conduit was not grounded elsewhere.

On July 29, 1992, David Dvorak, an employee of Lauhoff, was working in the E track area at Crete Mills. The evidence indicates that the insulation of the wiring inside the 2-inch conduit had failed, allowing high voltage to pass to the conduit itself. Because the 2-inch conduit was in close proximity to the abandoned 3-inch conduit, the 3-inch conduit also became energized with high voltage. When Dvorak came into contact with the 3-inch conduit, he became the source to ground and was electrocuted. The evidence indicates that the failure to ground the 2-inch conduit was in violation of both OSHA guidelines and the National Electrical Code.

The evidence is disputed as to who had removed the old disconnect and had installed the new wiring through the 2-inch conduit to attach it to the new disconnect. Benjamin D. Ens, the plant engineer at Crete Mills, testified by deposition that it was solely the job of Lauhoff employees to remove the old disconnect and install new wiring from the lighting transformer to the new disconnect. In contrast, Vernon C. Martin, the direct supervisor over the Lauhoff employees, stated in his deposition that it was his recollection that Lauhoff employees were not to do any high-voltage wiring as part of the Labor Day weekend shutdown. Alvin Duba, a Lauhoff electrician who worked over the Labor Day weekend shutdown, indicated in his deposition that he did not wire the 2-inch conduit and that such a job would not have been done by the electricians at Crete Mills because it dealt with high voltage. Duba described that the electricians at the Crete Mills facility generally worked with 480 volts or less and that contractors would be brought in to work with high voltage. The wiring contained in the 2-inch conduit was approximately 2,400 volts. Other expert witnesses likewise indicated that the Scholz electricians, who worked with high-voltage wiring, were more likely to have done the wiring in the 2-inch conduit.

## PROCEDURAL BACKGROUND

Dvorak, as personal representative of the estate of David Dvorak, sued Bunge as the owner of Lauhoff. Lauhoff was joined in the action because of rights it might have by reason of workers' compensation benefits paid. Dvorak brought a similar action against Scholz, again naming Lauhoff because of rights it might have due to its payment of workers' compensation benefits.

Bunge then filed a third-party petition against Scholz, alleging that Bunge's negligence, if any, was passive compared to the negligence of Scholz and requesting that Scholz indemnify Bunge in the event that Bunge was found to be liable to Dvorak. Dvorak's actions against Bunge and Scholz were eventually consolidated.

Summary judgment motions filed by Scholz were sustained against both Dvorak and Bunge. The trial court then dismissed Dvorak's petition against Scholz and Bunge's third-party peti-

tion against Scholz. Dvorak and Bunge timely filed motions for new trial.

The trial judge's minutes for March 3, 1997, state: "Plaintiffs' motions for new trial are overruled." The record does not reflect that the trial court filed such minutes in the records of the district court or that the trial court announced such findings in open court.

On March 10, 1997, Dvorak filed a notice of intention to appeal from the order of March 3. This appeal was docketed in the Nebraska Court of Appeals as case No. A-97-267. On March 31, Bunge filed a similar notice of appeal, which was docketed in the Court of Appeals as case No. A-97-352.

In response to these notices of appeal, the Court of Appeals issued an order to show cause why Dvorak's and Bunge's appeals should not be dismissed. The Court of Appeals reasoned that because the cases had been consolidated by the trial court and Bunge's motion for new trial had not been ruled upon, the Court of Appeals lacked jurisdiction over the appeals.

The trial judge's minutes for June 26, 1997, state:

> The court has been shown Judge Hannon's order to show cause filed in the Appellate Court No. A-97-267 and A-97-352. This court declares that it was the trial court's intent to overrule all motions for new trial on March 3, 1997, including that of Third Party Plaintiff, Bunge Corporation, et al. Therefor[e], Bunge's motion for new trial is overruled now and retroactively to March 3, 1997.

Again, the record does not reflect that these minutes were filed in the records of the trial court or that the trial court announced such findings in open court.

On July 1, 1997, the trial court filed the following order with the clerk of the district court:

> On March 3, 1997, this matter came on for consideration on Defendant/Third Party Plaintiff Bunge Corporation's Motion for New Trial regarding the Court's sustaining of the Third Party Defendant's Motion for Summary Judgment and Dismissal of Third Party Plaintiff's Petition. Upon due consideration, the Court finds that the Defendant/ Third Party Plaintiff's Motion for New Trial be and hereby is overruled.

However, no order was filed with the clerk setting forth the disposition of Dvorak's motion for new trial.

On July 25, 1997, Bunge filed a notice of intention to appeal from the trial court's order granting Scholz' motion for summary judgment and its "[o]rder denying the defendant's Motion for New Trial rendered on June 26, 1997." That appeal was docketed as case No. A-97-791, and we subsequently moved it to our docket.

On August 6, 1997, the Court of Appeals issued a "Memorandum Order" dismissing cases Nos. A-97-267 and A-97-352 for lack of jurisdiction. The court explained that the purported appeals were ineffective because at the time the parties filed their notices of appeal, there was an outstanding motion for new trial filed by Bunge which had not been ruled upon.

In the case at bar, case No. S-97-791, Bunge filed the operative notice of appeal and, thus, is designated "the appellant." Dvorak's brief sets forth a cross-appeal, and thus, she is designated "the cross-appellant." See Neb. Ct. R. of Prac. 9D(4) (rev. 1997). On January 14, 1998, Scholz moved to dismiss Dvorak's cross-appeal for lack of jurisdiction. The motion was overruled by this court.

## ASSIGNMENTS OF ERROR

Bunge and Dvorak assert, in summary, that the trial court erred in failing to find that there was a genuine issue of material fact regarding whether Scholz negligently failed to perform the duties imposed upon it and whether the alleged negligence proximately contributed to or caused the injuries sustained by David Dvorak that resulted in his death.

## ANALYSIS

### JURISDICTION

We first consider the jurisdictional issues presented herein. It not only is within the power, but it is the duty of an appellate court to determine whether the appellate court has jurisdiction over the matter before it. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). When lack of jurisdiction is apparent on the face of the record, yet the parties fail to raise it, it is the duty of a reviewing court to raise and determine the issue of

jurisdiction sua sponte. *Id.* The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court. *Stoneman v. United Neb. Bank,* 254 Neb. 477, 577 N.W.2d 271 (1998).

In order to determine whether we have jurisdiction, we address whether there has been a final disposition of Dvorak's and Bunge's motions for new trial. Where the record shows the filing of a motion for new trial but no final, appealable order by the trial court disposing of the motion, an attempted appeal in the action will be dismissed as prematurely taken. See, *Jerabek v. Ritz,* 221 Neb. 448, 377 N.W.2d 540 (1985); *Vasa v. Vasa,* 163 Neb. 642, 80 N.W.2d 696 (1957); *Mueller v. Keeley,* 163 Neb. 613, 80 N.W.2d 707 (1957).

We have explained that under Neb. Rev. Stat. § 25-1301 (Reissue 1995), there are two occurrences, either of which constitutes a final order, which may begin the 30-day period in which a notice of appeal must be filed: (1) the rendition of a judgment, which occurs when an oral pronouncement of the judgment is made in open court and a notation of the judgment is made on the trial docket, or (2) the entry of a judgment, which is the act of the clerk of the court spreading on the court's journal both the proceedings had and the relief granted or denied. The journal of the trial court is the official record of the judgments and orders of that court. *Tri-County Landfill v. Board of Cty. Comrs.,* 247 Neb. 350, 526 N.W.2d 668 (1995). See, also, *In re Interest of J.A.,* 244 Neb. 919, 510 N.W.2d 68 (1994). Most recently, in *Reutzel v. Reutzel,* 252 Neb. 354, 562 N.W.2d 351 (1997), we explained that a rendition of judgment occurs when the court makes an oral pronouncement in open court and accompanies that pronouncement with a notation on the trial docket or, in the alternative, when some written notation of the judgment is filed in the records of the court.

As pointed out in the statement of facts, there is no record of an oral pronouncement by the trial court overruling either Dvorak's or Bunge's motion for new trial. Therefore, in this case, if there is a final order disposing of either motion, it must be found in the entry of a judgment, which is the act of the clerk of the court spreading on the court's journal both the proceedings had and the relief granted or denied. See, *Tri-County*

*Landfill v. Board of Cty. Comrs., supra*; § 25-1301. In other words, there must be some written notation of the judgment filed in the official records of the court. See *Reutzel v. Reutzel, supra.*

We note that these requirements have been a source of confusion for trial courts and have presented numerous difficulties to appellate courts. However, until the situation is addressed by legislative enactment, we must continue to determine jurisdiction in accordance with § 25-1301.

The only notations regarding the trial court's decision on Dvorak's motion for new trial are the judge's minutes for March 3 and June 26, 1997, indicating that the motion was overruled. A copy of the judge's minutes was not filed by the clerk in the records of the court. Because there has been no rendition of judgment regarding Dvorak's motion for new trial, we are without jurisdiction to address Dvorak's cross-appeal, and it is dismissed as premature.

In contrast to Dvorak's motion, the appellate transcript does contain an order by the trial court filed in the official records of the court on July 1, 1997, which states that Bunge's motion for new trial was overruled. This order became final and appealable when it was filed in the office of the clerk of the district court for Saline County on July 1. See *Tri-County Landfill v. Board of Cty. Comrs., supra.* Therefore, the requirements of a final order have been met, and Bunge has timely perfected its appeal from the final order which dismissed its third-party petition against Scholz.

### MERITS

Having determined that we have jurisdiction over Bunge's appeal, we address whether the trial court erred in granting Scholz summary judgment on Bunge's third-party petition against it. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Woodard v. City of Lincoln, ante* p. 61, 588 N.W.2d 831 (1999). On a motion for summary judgment, the

question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Goff-Hamel v. Obstetricians & Gyns., P.C., ante* p. 19, 588 N.W.2d 798 (1999). Where reasonable minds differ as to whether an inference supporting the ultimate conclusion can be drawn, summary judgment should not be granted. *Schade v. County of Cheyenne*, 254 Neb. 228, 575 N.W.2d 622 (1998). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Woodard v. City of Lincoln, supra.*

Scholz argues that under the "accepted work doctrine," as a matter of law, it cannot be held liable for any negligent acts it may have committed. Under the accepted work doctrine, a construction contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation resulting from the negligent performance of his duty under his contract with the contractee where the injury or damage is sustained after the work is completed and accepted by the owner. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 579 N.W.2d 526 (1998); *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984). The evidence is undisputed that Scholz had no contractual relation to Dvorak and that the work done at Crete Mills by Scholz had been completed and was accepted by Lauhoff.

However, under an exception to the accepted work doctrine, regardless of the fact that the work has been completed and accepted, a contractor remains subject to liability where the contractor was dealing with inherently dangerous elements or the defect at issue was latent and could not have been discovered by the owner or employer. See *id.* In *Erickson*, we held that the installation of a transformer was an inherently dangerous task such that the law would not relieve the contractors' liability for their negligence merely because the owner accepted the work.

Likewise, we conclude here that the installation of the high-voltage wiring through the 2-inch conduit and the connection of the wiring to the new disconnect were inherently dangerous tasks. Thus, Scholz will not be relieved of liability on the basis

that Lauhoff accepted the work completed by Scholz. Because the evidence, viewed in a light most favorable to Bunge, indicates that Scholz may have either performed the wiring in question or connected that wiring to the new disconnect, we conclude that the trial court erred in granting summary judgment in favor of Scholz. Thus, the trial court's judgment in this regard is reversed, and the cause is remanded for further proceedings as to Bunge's third-party petition against Scholz.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

CROSS-APPEAL DISMISSED.