PETER M. HORNIG AND DIDI HORNIG,
HUSBAND AND WIFE, APPELLEES, V. MARTEL LIFT SYSTEMS,
INC., AND CROWN EQUIPMENT CORPORATION, APPELLANTS,
AND MANPOWER, INC., OF LINCOLN, APPELLEE.

606 N.W.2d 764

Filed February 11, 2000.    No. S-98-445.

Lyman L. Larsen and Neil B. Danberg, Jr., of Stinson, Mag & Fizzell, for appellants.

Ronald H. Stave for appellees the Hornigs.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Martel Lift Systems, Inc., and Crown Equipment Corporation (appellants) appeal the district court's order vacating a dismissal and reinstating this case in a subsequent court term. Appellees Peter M. Hornig and Didi Hornig sought reinstatement pursuant to the district court's equity jurisdiction. The issue to be decided is whether the district court was correct in reinstating the instant case, pursuant to its equity power, after adjournment of the term. We conclude that the facts warrant equitable relief and that therefore, the judgment of the district court is affirmed.

## I. BACKGROUND

On August 30, 1994, the Hornigs filed suit against appellants and Manpower, Inc., of Lincoln, which had a subrogation interest. Pursuant to a stipulation of the parties, the court extended the time within which to file a certificate of readiness to October 2, 1995. The case was subsequently dismissed on October 3 for failure to prosecute. On October 27, pursuant to a stipulation by the parties, the court entered an order which set aside the October 3 dismissal and reinstated the case. The court extended the time within which to file a certificate of readiness to April 1, 1996. On March 1, the Hornigs filed a motion to extend the time for filing a certificate of readiness from April 1 to September 15. Pursuant to the Hornigs' motion, the court again extended the time within which to file a certificate of readiness to September 15. When no certificate of readiness was filed, the court dis-

missed the case on September 17 for the second time. Pursuant to a stipulation by the parties, the court entered an order which set aside the September 17 dismissal and reinstated the case. The court extended the time within which to file a certificate of readiness to December 1.

The Hornigs filed a certificate of readiness for trial on December 2, 1996. Appellants then filed a motion to strike the certificate of readiness. Pursuant to the parties' agreement, the court sustained appellants' motion to strike and extended the deadline for the certificate of readiness to March 31, 1997. On April 1, when no certificate of readiness was filed, the court dismissed the case for the third time.

On December 29, 1997, counsel for the Hornigs forwarded a stipulation to appellants' local counsel to set aside the dismissal and reinstate the case. Although appellants' counsel received the stipulation on or about December 30, it was not reviewed until January 5, 1998. On January 12, appellants' counsel notified the Hornigs' counsel that appellants would not enter into the stipulation. Thereafter, on February 4, the Hornigs filed a motion to vacate the dismissal and reinstate the case. The motion was sustained, and the case was reinstated to the court's docket.

## II. ASSIGNMENTS OF ERROR

Appellants assign, renumbered and restated, that the district court erred in granting equitable relief when the Hornigs (1) failed to exercise due diligence in reinstating the case, (2) had an adequate remedy at law which they elected not to invoke, and (3) neither pled nor proved the doctrines of waiver and estoppel.

## III. STANDARD OF REVIEW

■ On appeal from an equity action, the appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996).

## IV. ANALYSIS

### 1. MOTION TO DISMISS APPEAL

This is an appeal from an April 6, 1998, order of the district court for Douglas County, which vacated its previous April 1,

1997, order of dismissal and granted the Hornigs' motion for reinstatement of the case. Prior to oral arguments, the Hornigs filed a motion to dismiss this appeal, pursuant to Neb. Ct. R. of Prac. 7B(1) (rev. 1996), alleging that this court "is without jurisdiction" because "the matter was never properly dismissed by the District Court."

The Hornigs argue that it was correct to reinstate their case because there was never a *valid* order of dismissal. If the dismissal was never valid, they argue, then there could be no error in the district court's reinstatement of the case. In support of their motion, the Hornigs rely on *Building Systems, Inc. v. Medical Center, Ltd.*, 228 Neb. 168, 421 N.W.2d 773 (1988), and *Harvey Oaks Dental v. Peter Letterese & Assocs.*, 7 Neb. App. 403, 583 N.W.2d 72 (1998). At issue in *Building Systems, Inc.* and *Harvey Oaks Dental* was the validity of an order purporting to automatically dismiss a case in which the certificate of readiness was not timely filed.

In *Building Systems, Inc.*, we held that a trial docket entry which purports to automatically dismiss a case at some time in the future based on the failure of some condition is a "conditional order" and is wholly void as it does not perform in praesenti. *Id.* at 170, 421 N.W.2d at 775. In addition, we held that entry of a dismissal on the trial docket by the clerk of the district court is not a valid order. A court clerk does not, we held, have the authority to enter a judgment of dismissal. *Id.*

The facts of this case, however, are distinguishable from those in *Building Systems, Inc.* In *Building Systems, Inc.*, the March 20, 1986, trial docket entry of dismissal was merely a standardized "rubber" stamp, stating "Case Dismissed— Progression Letter." As noted in the opinion, the March 20 entry *standing alone* was a purported order of dismissal entered by the clerk, with no indication of the district court's action on that date.

Here, we are not concerned with a "conditional order" purporting to automatically dismiss a case. Nor do we have a standardized rubber-stamped entry on the trial docket sheet with no evidence of judicial involvement. In this case, it is clear from the evidence in the record that the presiding judge initialed the stamped entry, which states, "Case Dismissed W/O Prejudice -

Progression Letter." An affidavit of the clerk of the district court for Douglas County clearly identifies the procedure used and identifies the person whose initials follow that entry as the presiding judge who considered the matter and adopted the standardized order as his own. The trial docket entry of April 1, 1997, was the "judgment" of the court as defined by Neb. Rev. Stat. § 25-1301(1) (Reissue 1995) in that it stated the "final determination of the rights of the parties in [the] action."

The trial docket entry standing alone, however, does not constitute a "rendition of judgment." This court has said many times that a trial docket entry alone, unaccompanied by an "oral pronouncement in open court," does not amount to a "rendition of judgment." On the other hand, we have also said that a "rendition of judgment" can occur in more than one manner. We most recently reiterated in *Dvorak v. Bunge Corp.*, 256 Neb. 341, 347-48, 590 N.W.2d 682, 686-87 (1999), the following rules of law:

> [I]n *Reutzel v. Reutzel*, 252 Neb. 354, 562 N.W.2d 351 (1997), we explained that a rendition of judgment occurs when the court makes an oral pronouncement in open court and accompanies that pronouncement with a notation on the trial docket *or, in the alternative, when some written notation of the judgment is filed in the records of the court.*
>
> As pointed out in the statement of facts, *there is no record of an oral pronouncement by the trial court* overruling either Dvorak's or Bunge's motion for new trial. Therefore, in this case, *if there is a final order disposing of either motion, it must be found in the entry of a judgment, which is the act of the clerk of the court spreading on the court's journal both the proceedings had and the relief granted or denied.* See, *Tri-County Landfill v. Board of Cty. Comrs.*[, 247 Neb. 350, 526 N.W.2d 668 (1995)]; § 25-1301. *In other words, there must be some written notation of the judgment filed in the official records of the court.* See, *Reutzel v. Reutzel, supra.*

(Emphasis supplied.)

Here, as in *Dvorak*, the final order dismissing this case is found in the "entry of a judgment, which is the act of the clerk

of the court spreading on the court's journal both the proceedings had and the relief granted or denied." See 256 Neb. at 347, 590 N.W.2d at 686. In this case, the clerk's notice to the parties, which was file stamped on April 3, 1997, is a "written notation of the judgment filed in the official records of the court." See *id.* at 348, 590 N.W.2d at 687. Thus, based on our case law, judgment was rendered in this case when the clerk spread on the court's journal the district court's "judgment" dated April 1, 1997. Unlike *Building Systems, Inc. v. Medical Center, Ltd.*, 228 Neb. 168, 421 N.W.2d 773 (1988), in this case, the clerk did not dismiss the case; the court did so. On April 3, the clerk, as he is required to do, entered that judgment on the court's journal and filed it in the official records of the court.

Thus, as of April 3, 1997, this case stood dismissed without prejudice, and we must address whether the district court had the authority to vacate its order of dismissal and reinstate the case outside the term.

To the extent the Hornigs rely on *Harvey Oaks Dental v. Peter Letterese & Assocs.*, 7 Neb. App. 403, 583 N.W.2d 72 (1998), we simply note there was no affidavit in the record of that case to explain or identify the handwritten initials following the stamped trial docket entry. Therefore, *Harvey Oaks Dental* is distinguishable and does not support the Hornigs' argument.

We also take this opportunity to add a word of caution to the lower courts and practicing bar. In *Dvorak v. Bunge Corp.*, 256 Neb. at 348, 590 N.W.2d at 687, we noted as to the law of final orders that "these requirements have been a source of confusion for trial courts and have presented numerous difficulties to appellate courts. However, until the situation is addressed by legislative enactment, we must continue to determine jurisdiction in accordance with § 25-1301." We now note that the Legislature did act during its last legislative session by passing 1999 Neb. Laws, L.B. 43, and amending, in part, § 25-1301 and Neb. Rev. Stat. § 25-1912 (Cum. Supp. 1998), effective August 28, 1999. See §§ 25-1301 and 25-1912 (Supp. 1999). That law will alter the landscape of "final orders" and will likely render issues such as that presented here as issues of last impression. We take this opportunity to urge both the trial courts and the practicing bar to familiarize themselves with this new legislation as it will have a substantial impact on future appeals.

### 2. Trial Court's Exercise of Equity Jurisdiction

We now address the trial court's decision to vacate its previous order of dismissal and reinstate this case outside the court term. We first note that the proper standard of review in this case is de novo on the record because the Hornigs sought reinstatement pursuant to the district court's independent equity jurisdiction. On appeal, equity actions are reviewed de novo on the record and questions of law and fact are determined independently from the trial court's conclusions. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996).

Apparently, there is some confusion as to the applicable standard of review because this court has previously stated, "[a]n appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion." *Thrift Mart v. State Farm Fire & Cas. Co.*, 251 Neb. 448, 451, 558 N.W.2d 531, 535 (1997). In *Thrift Mart*, however, the plaintiffs sought reinstatement of their dismissed case under both the trial court's statutory authority and under its independent equity jurisdiction. To the extent that *Thrift Mart* reviewed the trial court's refusal to exercise its independent equity powers for abuse of discretion, that decision is overruled. The correct standard of review for a trial court's exercise of equity jurisdiction is de novo on the record, with independent conclusions of law and fact.

### (a) Failure to Exercise Due Diligence

Appellants first argue that the district court erred when it granted equitable relief because the Hornigs failed to exercise due diligence in having the case reinstated after the April 1, 1997, dismissal. Appellants argue that because the Hornigs did not exercise due diligence in reinstating their case, they are not entitled to equitable relief.

It is a well-established maxim that equity aids the vigilant and the diligent, not those who sleep on their rights. See, 27A Am. Jur. 2d *Equity* § 120 (1996); 30A C.J.S. *Equity* § 115 (1992). This maxim is qualified, however, by another principle of equity which states that a party seeking to take advantage of the maxim must be free from fault, and the party must have done nothing to lull his or her adversary into repose, thereby obstruct-

ing and preventing vigilance on the part of the latter. See 30A C.J.S., *supra.* The Hornigs argue that due to appellants' past conduct in stipulating to reinstatement and in continuing with discovery after the April 1, 1997, dismissal, it was reasonable for them to believe that appellants would stipulate to reinstatement after the term of court ended. In other words, the Hornigs argue that appellants lulled them into inactivity. Appellants, therefore, should be prevented from taking advantage of the maxim that equity aids the vigilant and the diligent, not those who sleep on their rights.

We agree with the Hornigs that appellants' conduct prevents them from benefiting under the maxim that equity aids the diligent, not those who sleep on their rights. From our de novo review of the record, we conclude that appellants lulled the Hornigs into repose, thereby obstructing and preventing them from acting with vigilance. In this case, the dismissal occurred on April 1, 1997. After this date, appellants participated in the deposition of Dan Hartung on May 29. Appellants also participated in the Hornigs' efforts to depose appellants' expert, Paul Packman. The deposition of Packman was originally scheduled for June 18, but was continued to August 4 because of a conflict with appellants' schedule, and then was rescheduled to January 1998 because of conflicts with appellants' counsel's schedule. In addition, appellants' counsel served the Hornigs with new materials on September 5, 1997, including videotapes which were prepared by appellant Crown Equipment after appellants' initial response to the Hornigs' production requests. Obviously, appellants' counsel received a generous amount of leeway from the Hornigs in scheduling the deposition of appellants' expert witness, Packman. Then, in January 1998, appellants' counsel took advantage of the situation which he helped create by refusing to stipulate to reinstatement. Although one could argue that the Hornigs' counsel should have been more zealous, we cannot condone appellants' apparent strategy of "I gottcha."

We conclude that appellants' conduct prevents their use of the maxim that equity aids the vigilant, not the negligent. In light of the numerous dismissals and reinstatements in this case, coupled with appellants' continued participation in discovery after April 1, 1997, it was reasonable for the Hornigs to believe that

appellants would stipulate to reinstatement. Appellants are not without fault and shall not be permitted to take advantage of a situation which they helped create.

### (b) Adequate Remedy at Law

Next, appellants argue that the district court erred when it granted equitable relief because the Hornigs had an adequate remedy at law, which they elected not to invoke. To proceed in equity, the litigant must show that he or she is without a legal remedy; more specifically, that Neb. Rev. Stat. § 25-2001 (Cum. Supp. 1998) could not provide adequate relief. See *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983). This issue was addressed in *Emry*, where the court stated, "It is true that § 25-2001 is not the exclusive remedy for vacating a judgment after the term has expired. That statute is concurrent with an independent equity jurisdiction." 214 Neb. at 447, 334 N.W.2d at 794.

An action in equity must be founded on some recognized source of equity jurisdiction. See *Kulhanek v. Kulhanek*, 106 Neb. 595, 184 N.W. 139 (1921). The test of equity jurisdiction is generally the absence of an adequate remedy at law. *Adams v. Adams*, 156 Neb. 778, 58 N.W.2d 172 (1953). Whether a case is one of equitable cognizance depends upon the peculiar facts disclosed by the record. *Id.*

Appellants' argument focuses on the Hornigs' failure to plead and prove that § 25-2001 could not serve them. Appellants argue that because the Hornigs did not show that § 25-2001 could not serve them, they are not entitled to equitable relief. However, *Emry v. American Honda Motor Co.*, 214 Neb. at 447, 334 N.W.2d at 794, clearly states that the "statute is *concurrent* with an independent equity jurisdiction." Likewise, in *Roemer v. Maly*, 248 Neb. 741, 745, 539 N.W.2d 40, 44 (1995), the court noted that § 25-2001 is not a litigant's "exclusive remedy for vacating a judgment after the term has expired, because that statute is concurrent with an independent equity jurisdiction and with a court's inherent powers of equity."

This is not a situation in which the party seeking equity failed to institute proceedings under § 25-2001 within the applicable statute of limitations. See *Lindstrom v. Nilsson*, 133 Neb. 184,

274 N.W. 485 (1937). Nor is this a situation in which the party seeking equity could have proceeded under the statute and did not do so because of fault or laches on its part. See *Shipley v. McNeel*, 149 Neb. 793, 32 N.W.2d 636 (1948). Rather, this is a case in which the party seeking equity did not proceed under § 25-2001 because the statute did not apply.

Section 25-2001 provides nine different instances in which the district court has statutory power to vacate or modify its own judgment or order after adjournment of the term. The statute specifically provides:

> A district court shall have power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made (1) by granting a new trial of the cause within the time and in the manner prescribed in sections 25-1143 and 25-1145; (2) by a new trial granted in proceedings against defendants served by publication; (3) for mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order; (4) for fraud practiced by the successful party in obtaining the judgment or order; (5) for erroneous proceedings against an infant or person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings; (6) for the death of one of the parties before the judgment in the action; (7) for unavoidable casualty or misfortune, preventing the party from prosecuting or defending; (8) for errors in a judgment shown by an infant in twelve months after arriving at full age, as prescribed in section 25-1317; and (9) for taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

It is clear from the record that none of these provisions could have served the Hornigs in their attempt to reinstate the case. None of the nine enumerated categories in § 25-2001 contemplate a scenario like the one in which the Hornigs found themselves on February 4, 1998, when they filed their motion to reinstate the case. Therefore, the Hornigs' only option was to proceed under the court's independent equity jurisdiction. Since

the record contains facts sufficient to show that § 25-2001 could not serve the Hornigs, they were entitled to proceed in equity.

Appellants also argue that the Hornigs had an adequate remedy at law because they could have sought reinstatement of the case during the term in which the dismissal was made. While it is true that a district court has inherent authority to vacate or modify a decision within the same term that the initial decision was rendered, appellants' argument on this point is without merit. See *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993). The term "adequate remedy at law" refers to a remedy which is plain and complete, and as practical and efficient to the ends of justice as is the equitable remedy. See *Adams v. Adams*, 156 Neb. 778, 788, 58 N.W.2d 172, 178 (1953). Thus, in order to be an adequate remedy at law, the remedy must presently exist. See 30A C.J.S. *Equity* § 24 (1992).

The Hornigs' delay in seeking reinstatement after dismissal was a factor to consider in the granting of equitable relief; not a bar to proceeding in equity. Indeed, the whole point of the line of cases following *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983), is that a litigant is entitled to seek vacation or modification of a judgment at a subsequent term, notwithstanding the fact that reinstatement could theoretically have been sought during the same term in which the judgment was rendered. We therefore conclude that the Hornigs were entitled to seek equitable relief because they did not have an adequate remedy at law.

### (c) Waiver and Estoppel

Finally, appellants assert that the district court erred when it granted equitable relief to the Hornigs because they neither pled nor proved the doctrines of waiver and estoppel. Appellants argue that because the district court purportedly based its decision on the doctrines of waiver and estoppel, the Hornigs were required to plead and produce evidence in support of these doctrines. We disagree.

Although the order of the district court could be interpreted as relying upon the doctrines of waiver and estoppel, there is no legal requirement that a trial court must find estoppel or waiver in order to grant equitable relief. We have determined

that the district court properly exercised its independent equity jurisdiction in this case. Based on our de novo review of the record, we agree that the Hornigs were entitled to equitable relief. The district court's reference to waiver and estoppel have no effect on the outcome of this appeal. A proper result will not be reversed merely because it was reached for the wrong reasons. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999). Where the record demonstrates that the decision of a trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343 (1998). When the equities are balanced in this case, it is clear that appellants' "I gottcha" tactic entitled the Hornigs to equitable relief. To conclude otherwise would be to reward appellants for taking advantage of a situation which they helped create.

## V. CONCLUSION

We therefore conclude that the district court was correct in exercising its independent equity jurisdiction in vacating its order of dismissal and reinstating this case to its trial docket. Therefore, the judgment is affirmed.

AFFIRMED.