IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE TRUST OF MORRIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE AMENDED AND RESTATED IRREVOCABLE TRUST
OF BEVERLY J. MORRIS, DECEASED.

DIANE RICH ET AL., APPELLEES,
V.
DR. ALLEN MORRIS, APPELLANT.

Filed June 24, 2014.    No. A-13-313.

Appeal from the County Court for Douglas County: JOSEPH P. CANIGLIA, Judge. Affirmed.

James D. Sherrets, Diana J. Vogt, and Robert S. Sherrets, of Sherrets, Bruno & Vogt, L.L.C., for appellant

Kristopher J. Covi, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees.

INBODY, Chief Judge, and IRWIN and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Dr. Allen Morris, trustee of the irrevocable trust of Beverly J. Morris, deceased, appeals an order of the county court for Douglas County, Nebraska, denying his application to vacate a prior order and finding him in contempt. On appeal, Morris has assigned numerous errors related to the court's refusal to vacate the prior order and the court's finding of contempt. We find no merit to the assertions on appeal regarding the court's ruling denying vacation of the prior order. We find that the finding of contempt is not appealable. We affirm.

- 1 -

## II. BACKGROUND

Beneficiaries of the irrevocable trust of the deceased filed an action in the county court in October 2011, seeking to compel an accounting by the trustee, Morris. In the amended application, the beneficiaries alleged that a prior case in the district court, in which a deed of trust transferring property from the deceased to Morris had been challenged, had been defended by Morris in his personal capacity. The beneficiaries alleged that Morris had incurred attorney fees in his personal capacity, but had converted trust assets to his own use to pay his personal attorney fees. The beneficiaries sought to have Morris restore $66,787.06 to the trust and to distribute the trust assets according to its terms.

Morris answered the application. In his answer, Morris alleged that he had defended the district court case both in his personal capacity and in his official capacity as trustee. Morris alleged that he had authority, as trustee, to pay attorney fees incurred in defending the district court case. Morris alleged that there were no funds in the trust to be distributed.

In March 2012, the parties appeared for trial on the application to compel accounting. The parties represented to the court that they had worked out a resolution and had reached a settlement agreement. The agreement was read into the record. The agreement provided that there was then slightly more than $10,000 in the trust and that Morris would repay slightly more than $63,000 into the trust within 90 days. The agreement then called for distribution of a portion of the $10,000 on the following Monday and called for distribution of the remaining amounts once paid in, within 90 days. Morris personally represented to the court that he agreed.

On March 29, 2012, the court entered an order incorporating the parties' agreement. The court's order iterated the terms that had been stated in open court, including that Morris was supposed to have distributed a portion of the $10,000 that was already in the trust by March 4, that Morris was to pay slightly more than $63,000 into the trust by May 31, and that Morris was to distribute the total amounts according to the terms of the trust by May 31.

On June 1, 2012, the beneficiaries filed a motion seeking to have Morris held in contempt. The beneficiaries noted the prior agreement of the parties and the court's order consistent with that agreement, and alleged that despite the prior agreement and court order, Morris had made no payments and all communications with Morris' counsel had been ignored.

Morris responded to the contempt request by moving to vacate the court's prior order. Morris alleged that he had lacked sufficient mental capacity to enter into the agreement, that there had been a mistake, and that he had been unable to understand the terms he had agreed to.

The court held a single hearing, at which testimony and evidence was adduced concerning both the motion to vacate the prior order and the request to have Morris held in contempt.

During the hearing, Morris presented evidence establishing that he had suffered from multiple sclerosis (MS), diagnosed as early as 2003. Morris had previously been a surgeon, but was unable to continue in that capacity, although he did continue being a doctor. In February 2007, Morris suffered a workplace injury that caused significant worsening of his condition, and he ceased practicing medicine in May 2007. Morris' doctor testified about physical and cognitive impacts of MS. He testified that Morris' condition was a "chronic degenerative disorder" that was getting worse. He ultimately gave an opinion that as of June 2011, Morris was "not able to

make an independent, informed decision." He testified that his opinion would be the same concerning March 2012.

On cross-examination, Morris' doctor acknowledged that he had not conducted any evaluation of Morris between June 2011 and March 2012. He also acknowledged that "MS patients, like all individuals, can have good days and bad days" and that Morris might be able to perform better mentally some weeks than other weeks.

Morris also presented evidence that he relied heavily on his wife to serve as a "cognitive aid." His wife testified that Morris has trouble following conversations, does not handle stress well, and generally "needs a lot of help." She testified that "[o]nce . . . things are explained to him generally he can understand them, but he needs help." She testified that she also suffers from MS and that she had been ill prior to the March 2012 hearing where the parties entered into the settlement agreement. She testified that she believed that Morris wanted to "just get out of [t]here" and was willing to "do whatever." She testified that the next day she and Morris "really weren't too clear on exactly what had occurred" at the hearing.

Morris testified that he had been told that his condition had worsened over the years. He testified that he had been told that it impacts his ability to understand things. He testified that stress increases his symptoms, and he testified about the stresses leading up to the March 2012 hearing. He testified that his primary objective that day had been getting out of court and getting his wife out of court because she was ill. He testified that he did not understand what he had done. He testified that the next day, he did not recall having entered into a settlement agreement.

Morris testified that he believed he was fit to continue acting as a trustee. He later testified that he was serving as the trustee of another trust as well. He testified that he believed that if given sufficient help and time, he had the ability to administer a trust.

The attorney who had represented Morris at the time of the March 2012 hearing also testified. He testified that the parties at that time had engaged in settlement negotiations and that he had not been concerned about Morris' understanding of what was going on. The attorney testified that during the negotiations, Morris asked questions, negotiated a period of time for his repayment of money to the trust, and discussed the terms of the settlement agreement with the attorney. He testified that he had known that Morris suffered from MS, but had been unaware of "the extent of it" at the time.

At the conclusion of the hearing, Morris' counsel moved for a directed verdict and argued that he had shown as a matter of law that Morris had not been competent to enter into a settlement agreement on the date in question. The beneficiaries' counsel argued that the medical testimony was not believable because it suggested that Morris got worse every day and was substantially worse than 5 years prior, that the medical testimony established that Morris had good days and bad days, and that Morris' doctor had not conducted an evaluation for 1 year before the date in question. The beneficiaries' counsel also argued that the evidence demonstrated that the parties had engaged in a 1½-hour negotiation, that everyone involved was stressed, but not that Morris did not understand what was going on.

The court made specific findings that it had "heard the medical testimony" and had "seen [Morris] and his wife testify" and that "the medical testimony just doesn't jive with what [the court] saw before [its] own eyes." The court denied the motion to vacate the prior order implementing the settlement agreement.

The parties then presented brief evidence concerning the request to hold Morris in contempt. The parties stipulated that Morris had not complied with the court's prior order.

Morris testified that he did not have money to comply with the order. He testified that he had quit his medical practice in 2007, had not worked since then, and lived on disability payments. He also testified that he had no assets to liquidate.

Morris acknowledged that the trust had in excess of $10,000 in it and acknowledged that there was sufficient money in the trust to allow him to comply with the prior order's first required distribution of approximately $9,000. He testified that he could not "mentally" bring himself to comply with that order, but acknowledged that there was money in the trust to allow it.

Morris testified that he had a joint bank account, but was unaware of the balance in the account. He testified that he served as the trustee of another trust, but was unaware of whether any assets in that trust were available to him. He testified that he could not remember if the other trust had any bank accounts.

At the conclusion of the hearing, the court found that Morris was in violation of the prior court order and found him to be in contempt.

The court entered a written order in which the court made findings that Morris had been aware of the terms of the settlement agreement incorporated into the prior court order and had participated in negotiating the terms. The court found that Morris' testimony established that he had knowledge and an understanding of what the order required and that he had entered into the settlement voluntarily. The court denied the motion to vacate the prior court order and found that Morris had been willfully disobedient. The court ordered Morris to distribute slightly more than $9,000 of the money then in the trust "immediately" and ordered him to pay slightly less than $46,000 for the benefit of the trust beneficiaries within 60 days. The order provided that "[f]ailure to comply . . . shall result in appropriate contempt penalties to be delivered by the court."

## III. ASSIGNMENTS OF ERROR

On appeal, Morris raises a number of assignments of error asserting that the county court erred in refusing to vacate the prior order and in finding him in contempt. Morris also asserts that the court should have recused itself because of bias.

## IV. ANALYSIS

### 1. MOTION TO VACATE

Morris first asserts that the county court erred in refusing to vacate the prior order, which prior order had incorporated the terms of the settlement agreement agreed to by the parties in March 2012. In this regard, Morris primarily argues that the court erred in not finding him incompetent to enter into a settlement agreement, in rejecting medical testimony, and in refusing to vacate the prior order under equity powers. We find no merit to these assertions.

### (a) Standard of Review

We initially address the appropriate standard of review for this case. Morris asserts that we should review the county court's ruling on his motion to vacate the prior order under a de

novo standard of review because the motion to vacate requested that the district court exercise its equitable authority to vacate an order. The beneficiaries assert that we should review the county court's ruling under an abuse of discretion standard.

We initially note that there appears to be a direct conflict in the case law concerning the appropriate standard of review for a Nebraska appellate court reviewing a lower court's ruling on a motion to exercise equitable authority to vacate an order within the same term in which the order was entered.

In *Hornig v. Martel Lift Systems*, 258 Neb. 764, 770, 606 N.W.2d 764, 769 (2000), the Nebraska Supreme Court very clearly and explicitly ruled that the appropriate standard of review when reviewing a district court's ruling on a motion to vacate and set aside a prior order of dismissal pursuant to the district court's independent equity jurisdiction "is de novo on the record." In that case, the Supreme Court reviewed a district court order vacating a prior dismissal; the motion to vacate was filed outside of the term in which the dismissal was filed, but within 6 months of the end of the term. The Supreme Court recognized that there was, at that time, confusion as to the applicable standard of review. The court noted it had previously held that an appellate court would reverse a decision on a motion to vacate or modify a judgment only upon a showing of an abuse of discretion and quoted such a holding in its prior decision in *Thrift Mart v. State Farm Fire & Cas. Co.*, 251 Neb. 448, 558 N.W.2d 531 (1997). See *Hornig v. Martel Lift Systems, supra.* The court specifically distinguished the application of the abuse of discretion standard in the *Thrift Mart* case, holding that the moving party in that case had sought to have the dismissal order vacated under both the trial court's statutory authority and under its independent equity jurisdiction. *Hornig v. Martel Lift Systems, supra*. The court specifically held that "[t]o the extent that *Thrift Mart* reviewed the trial court's refusal to exercise its independent equity powers for abuse of discretion, that decision is overruled" and very clearly stated that "[t]he correct standard of review for a trial court's exercise of equity jurisdiction is de novo on the record, with independent conclusions of law and fact." *Hornig v. Martel Lift Systems*, 258 Neb. at 770, 606 N.W.2d at 769.

Three years later, however, in *Hartman v. Hartman*, 265 Neb. 515, 657 N.W.2d 646 (2003), the Nebraska Supreme Court reviewed a case in which a party moved to vacate a dissolution of marriage decree. The party sought vacation of the decree under both the court's statutory authority and under the court's independent equity powers. The district court dismissed the motion to vacate, and the party appealed.

In its analysis of the issue, the Supreme Court first concluded that although the party had based its motion to vacate in part on the district court's statutory authority to vacate prior orders, the statutory basis pled by the party applied only to applications to vacate made outside of the term in which the order was entered. Because the party had sought to vacate the decree during the same term in which it was entered, the court concluded that the statutory grounds for vacation pled by the party were not applicable. Thus, the court limited its analysis of the issue to a determination of whether the district court had erred in not exercising its inherent equitable authority to vacate a decision within the same term.

The Supreme Court noted that "[i]t is well settled that a district court has the inherent authority to vacate or modify a decision within the same term that the decision is rendered." *Hartman v. Hartman*, 265 Neb. at 519, 657 N.W.2d at 649. The court then recognized that a

district court has equitable power to vacate a judgment during the term in which it was entered on grounds which include, but are not limited to, those enumerated in Neb. Rev. Stat. § 25-2001(4) (Reissue 2008), which statute provides statutory grounds for vacation of a judgment out of term. See *Hartman v. Hartman, supra*.

The Supreme Court then specifically stated that "[b]ecause the decision to vacate an order anytime during the term in which the judgment is rendered is within the discretion of the court such a decision will be reversed only if the district court abused its discretion." *Hartman v. Hartman*, 265 Neb. at 519, 657 N.W.2d at 649. The court ultimately concluded that the district court "did not abuse its discretion in denying the motion to vacate." *Id.* at 521, 657 N.W.2d at 650.

In *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013), the district court entered a default order modifying a dissolution of marriage decree. Thirteen days later--within the same term--a party filed a motion for new trial, to alter or amend the modification order, or to vacate it. The district court overruled the motions for new trial and to alter or amend, but granted the motion to vacate. On appeal, the Nebraska Supreme Court recognized that the district court had "inherent power to vacate or modify its own judgment at any time during the term in which the court issued it" and that "we review the court's order doing so for an abuse of discretion." *Id.* at 102, 835 N.W.2d at 49. The Supreme Court ultimately concluded that the district court did not "abuse its discretion" in granting the motion to vacate. *Id.* at 106, 835 N.W.2d at 51.

In *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011), a dissolution of marriage decree was entered, and within the same term, one party moved to vacate the decree. On appeal from the district court's denial of the motion, the Nebraska Supreme Court stated that "[w]e will reverse a decision on a motion to vacate only if the litigant shows that the district court abused its discretion." *Id.* at 44, 803 N.W.2d at 422. The court did not include any discussion of equitable powers, but inasmuch as the request to vacate was made within term, it is apparent that it was a request for the district court to exercise its equitable powers, and the Supreme Court again applied an abuse of discretion standard of review.

In its ruling in *Johnson v. Johnson, supra*, the Supreme Court cited to *Destiny 98 TD v. Miodowski*, 269 Neb. 427, 693 N.W.2d 278 (2005), in which the court also indicated an abuse of discretion standard of review applied to reviewing a district court's ruling on a motion to vacate that had been filed within the same term as the order sought to be vacated. In *Destiny 98 TD v. Miodowski, supra*, the court ultimately ruled that the district court had erred on a matter of statutory interpretation that merited reversal, and the court did not make a finding of an abuse of discretion.

We conclude that the Supreme Court's jurisprudence, *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 704 (2000), notwithstanding, has been consistent since 2003 in indicating that when a court is moved to vacate a prior order entered within the same term of court, under the court's inherent authority to do so, such a decision is within the discretion of the court and is reviewed on appeal for an abuse of discretion. We also note that although the cases discussed above are all district court cases, it has long been recognized that county courts also have inherent authority to vacate or set aside orders entered within the same term as an equitable authority incidental to the jurisdiction conferred by statute to act in particular areas of law. See, *In re Estate of Jensen*, 135 Neb. 602, 283 N.W. 196 (1939); *Volland v. Wilcox*, 17 Neb. 46, 22

N.W. 71 (1885). See, also, *General Serv. Bureau v. Moller*, 12 Neb. App. 288, 572 N.W.2d 41 (2003) (district court and appellate court reviewed county court's refusal to set aside default judgment for abuse of discretion and iterating propositions of law concerning inherent authority to vacate or modify within term). Thus, we apply an abuse of discretion standard of review to our review of the county court's decision denying Morris' application to vacate.

(b) Merits of Appeal on Motion to Vacate

Morris argues that the county court erred in denying his motion to vacate the prior order. In this regard, he primarily argues that the evidence established that because of his MS and stresses he was under at the time of the settlement agreement that led to the prior order, he was unable to understand what he was agreeing to. He argues that the uncontroverted medical testimony established that he lacked capacity to enter into a settlement agreement and that, accordingly, the court's prior order should have been vacated.

Although it is accurate to note that the beneficiaries did not present medical evidence to contradict the testimony of Morris' doctor, we do not find the medical evidence to be uncontroverted. Rather, the beneficiaries' counsel raised issues concerning the credibility of Morris' doctor and Morris through cross-examination of the witnesses.

Although Morris' doctor testified that Morris had been diagnosed with MS as early as 2003 and described MS as a "chronic degenerative disorder" that was getting worse, he also acknowledged that he had not conducted any evaluation of Morris between June 2011 and March 2012. He had not evaluated Morris' condition, or cognitive abilities, for nearly 1 year prior to the date of the hearing where the parties entered into the settlement agreement, and there was no evidence that he observed or evaluated Morris in any way on the date in question. Morris' doctor also testified that "MS patients, like all individuals, can have good days and bad days" and that Morris might be able to perform better mentally some weeks than other weeks.

Although Morris' doctor ultimately gave an opinion that as of June 2011 Morris was "not able to make an independent, informed decision," he did not testify that Morris was unable to make informed decisions when receiving sufficient advice and assistance. On the date in question, when Morris entered into the settlement agreement, he was represented by counsel who was involved in the settlement negotiations. Although Morris' counsel from the date in question testified that he had been unaware of the "extent" of Morris' MS at the time, he was aware that Morris suffered from MS. Morris' counsel testified that during the negotiations, Morris asked questions, negotiated a period of time for repayment of money to the trust, and discussed the terms of settlement with him.

Morris also presented evidence that he relied heavily on his wife as a cognitive aid, and that she also suffered from MS and was ill at the time of the hearing when the settlement agreement was entered into. Although his wife testified that Morris had trouble following conversations and needed help, she also testified that "[o]nce . . . things are explained to him generally he can understand them." As noted, the evidence indicates that Morris had counsel at the time and that he and his counsel discussed the settlement negotiations and the terms of settlement. When the parties appeared in court and informed the court that a settlement had been reached, Morris specifically represented to the court that he agreed with its terms and the court had the opportunity to hear and observe him at that time.

At the conclusion of the hearing in this case, the beneficiaries' counsel argued to the court that Morris' doctor's testimony would suggest his condition had progressively gotten worse over the past 5 years and that the doctor was not believable. The beneficiaries' counsel argued that the evidence demonstrated the parties engaged in a negotiation, that everyone was under stress at the time, but that the evidence did not demonstrate Morris did not know what was going on. The court agreed and indicated in open court that, having seen and heard the testimony of the witnesses, Morris' doctor's testimony and opinion did not "jive" with his observations of Morris.

At the conclusion of the hearing in this case, the court entered an order in which it made specific findings about the credibility of the witnesses. The court made specific findings that Morris was aware of the terms of the settlement agreement reached by the parties and participated in working out the terms of the agreement. The court specifically found that "the manner in which [Morris] testified and his testimony itself proves his knowledge of the effect of his agreement and the impact of it, and that he entered into it voluntarily."

Even though the motion to vacate was brought seeking to invoke the county court's inherent powers, we do not turn a blind eye to the fact that the crucial issue to be determined rested heavily on the credibility of the witnesses. In an appeal from an equity action, when credible evidence is in conflict on material issues of fact, we consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *American Amusements Co. v. Nebraska Dept. of Revenue.*, 282 Neb. 908, 807 N.W.2d 492 (2011). In this case, the credible evidence was in conflict because, as noted above, questions about credibility or the sufficiency of the medical opinions and Morris' own testimony were raised through cross-examination; those questions on cross-examination created a conflict in the evidence and called into question the correct conclusion to be drawn from the evidence. The county court made a credibility finding, and we give weight to it.

We find no abuse of discretion by the county court in denying Morris' application to vacate the order adopting the parties' negotiated settlement agreement. We also note, for the sake of completeness, that even if we reviewed the county court's decision de novo on the record, as Morris urged, we would give weight to the court's conclusions based on the credibility of the witnesses and would similarly find no merit to Morris' assertion on appeal that the county court erred.

## 2. CONTEMPT

Morris next asserts that the county court erred in finding him in contempt. Morris argues primarily that the court erred in finding a willful violation because there was not a sufficient showing that he was capable of complying with the prior court order. Because the court's finding of contempt was not accompanied by any sanction, we find that the contempt ruling is not a final, appealable order.

The law in Nebraska has long been that the finding of contempt alone, without a noncontingent order of sanction is not appealable. See, *Meisinger v. Meisinger*, 230 Neb. 37, 429 N.W.2d 721 (1988); *State ex rel. Kandt v. North Platte Baptist Church*, 225 Neb. 657, 407 N.W.2d 747 (1987); *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984). See, also, *In re Interest of Karlie D.*, 19 Neb. App. 135, 809 N.W.2d 510 (2011) (analogizing interlocutory order in juvenile proceeding to one in contempt proceeding making findings of contempt but

imposing no sanction and concluding such situation results in no final order from which to appeal).

In this case, the only order presented in our record concerning Morris' being held in contempt included the court's finding that Morris had willfully disobeyed the court's prior order by not paying any of the amounts ordered to be paid, despite acknowledging in his own testimony that part of the money was in the trust and available to make payments. The court directed Morris to comply and concluded that "[f]ailure to comply with the above terms . . . shall result in appropriate contempt penalties to be delivered by the court." Thus, no actual sanction was included in the court's order.

Because the court made a finding of contempt but imposed no sanction, the contempt finding is not appealable.

### 3. RECUSAL

Finally, Morris asserts that the county court erred in not recusing itself. Morris argues that the court exhibited bias.

In his reply brief, Morris acknowledges that "[i]f this court sustains the trial court's ruling in this case the issue of recusal is irrelevant. However, if this court reverses the decision and returns the case for further proceedings, [the trial judge] should recuse himself." Reply brief for appellant at 9. Morris' arguments about the trial judge's alleged bias and need for recusal concern Morris' assertions that the court erred in denying his motion to vacate the prior order.

Inasmuch as we have concluded that the county court's denial of the motion to vacate should be affirmed, we decline to further address the issue of recusal, consistent with Morris' assertion the issue is now irrelevant.

AFFIRMED.