Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/27/2025 09:09 AM CDT

Matthew M. Jaksha, appellee, v.
Jessica L. Jaksha, appellant.

___ N.W.3d ___

Filed June 27, 2025.    No. S-24-700.

1. **Divorce: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Motions to Vacate: Time: Appeal and Error.** A district court has inherent power to vacate or modify its own judgments at any time during the term in which those judgments are pronounced, and a decision to modify will be reversed only if the district court abused its discretion.

4. **Motions to Vacate: Proof: Appeal and Error.** An appellate court will reverse a decision on a motion to vacate or modify a judgment under the statutory grounds listed in Neb. Rev. Stat. § 25-2001 (Reissue 2016) only if the litigant shows that the district court abused its discretion.

5. **Equity: Jurisdiction: Appeal and Error.** A trial court's decision to vacate or modify based on its equitable jurisdiction is reviewed de novo on the record.

6. **Motions to Vacate: Time.** As a general rule, interlocutory orders can be vacated or modified at any time prior to the entry of a final judgment or final order.

7. ____: ____. Although Neb. Rev. Stat. § 25-2001 (Reissue 2016) governs a district court's power to vacate or modify its judgments or orders after the end of the term, it does not bar the reconsideration of interlocutory orders entered in a prior term.

8. **Courts: Jurisdiction: Motions to Vacate: Time.** Courts of general jurisdiction possess the inherent power to vacate and modify their own judgments at any time during the term at which they were pronounced.

9. **Equity: Jurisdiction: Motions to Vacate.** A district court's equity jurisdiction to vacate or modify a judgment or order is not dependent upon Neb. Rev. Stat. § 25-2001 (Reissue 2016); rather, § 25-2001 is concurrent with an independent equity jurisdiction.

10. **Equity: Jurisdiction: Proof.** As a general rule, for a district court to exercise its equitable jurisdiction, there must be a showing that there is no adequate remedy at law.

11. **Appeal and Error.** An appellate court will not consider an argument or theory raised for the first time on appeal.

Appeal from the District Court for Douglas County: James M. Masteller, Judge. Affirmed.

John A. Kinney, of Kinney Mason, P.C., L.L.O., for appellant.

Matthew P. Saathoff and Jacob A. Acers, of Saathoff Law Group, P.C., L.L.O., for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Stacy, J.

This is an appeal from a 2024 order that denied a request to vacate or modify a 2021 order of modification entered in a dissolution action. Finding no merit to the assignments of error, we affirm.

## I. BACKGROUND

### 1. 2017 Dissolution Decree

The marriage of Matthew M. Jaksha and Jessica L. Jaksha was dissolved in September 2017. In a stipulated decree, the court awarded the parties joint legal and physical custody of their minor child, born in 2014. Matthew was ordered to pay monthly child support. The decree incorporated a detailed parenting plan that gave each party nearly equal parenting time and addressed regular parenting time, holidays, and vacations. The parenting plan included Jessica's agreement that she would not exercise her parenting time if she was "under the influence of intoxicating substances." The parties agreed

that if Jessica violated this agreement, Matthew could proceed with a complaint to modify legal and physical custody.

## 2. First Modification (May 2020)

In July 2019, Jessica filed a complaint to modify, seeking sole legal custody and the ability to decide where the child attended school. Matthew filed a counterclaim also seeking sole legal custody and alleging the parties could no longer make joint decisions.

On May 29, 2020, the court entered what was captioned an "Order of Modification (By Stipulation)." This stipulated modification order retained joint physical custody but awarded Matthew sole legal custody of their minor child, except that Jessica was given "authority and decision making" over the child's religious upbringing. The modification order prohibited Jessica from being under the influence of any alcohol or drugs during her parenting time, except as prescribed by her treating physician. The order provided that in the event Jessica violated these sobriety requirements, her regular parenting time would be suspended and replaced by "telephone/facetime contact" or supervised parenting time until she "regain[ed] a level of sustained sobriety and recovery," at which time her regular parenting time schedule would resume.

## 3. Second Modification (October 2021)

In December 2020, Matthew filed a complaint to modify, seeking an award of sole physical custody of the minor child, a decrease in Jessica's parenting time, and a modification of the parties' financial responsibilities. The complaint alleged that since the May 2020 modification order, Jessica had used intoxicating substances, had been in residential treatment, and had missed a significant amount of parenting time. Jessica's February 2021 answer generally denied the complaint's allegations.

In July 2021, the parties appeared with their attorneys and advised the court they had reached an agreement, which they

recited on the record in open court. Among other things, they agreed that
• Matthew should be awarded sole legal and physical custody of their minor child, subject to Jessica's parenting time pursuant to a transitional plan with three tiers.
• Under the first tier, Jessica's parenting time would be supervised for a period of 120 days. Under the second tier, her parenting time would be "semi-supervised" for another 120-day period. And under the third tier, Jessica would have unsupervised parenting time every other weekend from Friday night through Monday morning, and two dinners per week with the minor child.
• If Jessica were to relapse on drugs or alcohol, her parenting time would revert to the first tier and proceed through the transitional plan again.
• Jessica would not owe any child support, and a downward deviation was appropriate.
• Jessica would enroll in family therapy with the minor child at her own expense.
• Jessica would continue to pay for and use a "SoberLink" device and provide reports to a "designated person" for the remainder of the minor child's minority. She would also pay for installation and use of an ignition interlock device in her vehicle before being allowed to transport the minor child in that vehicle.

Both parties testified under oath that this was their agreement, and the attorneys represented that a stipulated order of modification would be provided to the court reflecting that agreement and resolving all issues raised in the modification proceeding. The court explained to the parties that "when I sign this final order of modification, the orders therein are not suggestions. They're actually orders, and I do expect everyone to comply with those orders."

On October 7, 2021, the court entered what was again captioned an "Order of Modification (By Stipulation)." The 2021 modification order was approved as to form and content by

the notarized signatures of both Matthew and Jessica, each of whom stated, "I respectfully request the Court to enter the above Order of Modification." The order also contained a provision certifying that the parties entered into the stipulated modification "upon mature consideration and after ample opportunity to seek the advice of separate counsel [and] that consent to the execution of this Order of Modification has not been obtained by duress, fraud, or undue influence."

The provisions of the 2021 modification order were consistent with the stipulated agreement recited on the record. The order also included express findings that there had been a material change in circumstances since the prior modification order, that the modified provisions of custody and parenting time were in the best interests of the minor child, and that the downward deviation in child support was appropriate, in the best interests of the child, and approved. Finally, in the decretal portion of the modification order, the court "ORDERED, ADJUDGED, AND DECREED that unless modified herein, the Decree of Dissolution of Marriage dated September 26, 2017 and Order of Modification dated May 29, 2020 shall remain in full force and effect."

### 4. Jessica's Complaint for Third Modification Denied

On August 8, 2023, Jessica filed another complaint to modify. She alleged there had been a material change in circumstances because she had maintained her sobriety for a period of 28 months. She asked to be awarded joint legal and physical custody of the minor child and additional parenting time. Matthew responded with what he titled a "Motion for Judgment on the Pleadings and Motion to Dismiss." His motion asserted that Jessica's complaint to modify failed to allege a material change in circumstances that was not contemplated when the October 2021 modification order was entered.

After a hearing, the district court granted Matthew's motion and dismissed the complaint to modify. In an order entered

February 2, 2024, the court found that Jessica's allegation of sustained sobriety was not a material change in circumstances because it was contemplated by the parties at the time of the prior modification and was addressed in the tiered parenting plan outlined in the October 2021 modification order.

Jessica did not appeal from the February 2024 order dismissing her complaint to modify. Instead, approximately 6 weeks later, she filed a motion to vacate or amend the October 2021 modification order.

### 5. Jessica Seeks to Vacate or Amend 2021 Modification Order

On March 18, 2024, Jessica filed a motion, which she later restyled as a complaint,[1] asking the court to vacate or amend the October 2021 modification order or, in the alternative, to allow the parties to relitigate the 2021 modification proceeding. Jessica's complaint did not cite to any common-law rule or statutory authority for the request to vacate or amend, nor did it ask the court to exercise its equitable jurisdiction. Instead, the complaint broadly alleged that the October 2021 modification order was not a "final order," and therefore, Jessica asked that the parties be allowed to relitigate the merits of the modification pleadings on which the October 2021 modification order was based.

The court held a hearing on Jessica's complaint to vacate or amend. Both parties offered evidence generally consisting of the pleadings and court records detailed above, and each presented argument.

As relevant to the issues on appeal, Jessica argued that the October 2021 modification order was not a final order and therefore remained subject to modification. She asked that the matter "move forward . . . on the pleadings that were a lead-up to October 7, 2021," reasoning that "[t]hose pleadings

---

[1] See Neb. Rev. Stat. § 25-2002 (Reissue 2016) (proceedings to vacate or modify judgments on grounds mentioned in Neb. Rev. Stat. § 25-2001(4) (Reissue 2016) "shall be by complaint").

were never resolved." She also generally argued the 2021
modification order should be vacated because it limited her
parenting time and was "archaic," "punitive," and "not . . .
equitable." Matthew disagreed and argued the 2021 modi-
fication order was a final order that resolved all the issues
presented in the second modification proceeding. He also
generally argued that the district court lacked authority to
vacate or modify the 2021 modification order. The district
court took judicial notice of all court filings in the dissolu-
tion matter and took the matter under advisement subject to
additional briefing.

In an order entered August 21, 2024, the district court denied
Jessica's complaint and all relief requested therein. The court
rejected Jessica's contention that the October 2021 modifica-
tion order was not final. Instead, the court expressly found that
because that order finally disposed of Matthew's December
2020 complaint to modify and left nothing for further consid-
eration, it was a final order.

Having concluded the 2021 modification order was final,
the court focused on whether it had the authority to vacate
or modify it. The court addressed its inherent authority to
vacate or modify an order or judgment during the court term in
which the order or judgment was entered,[2] as well as its statu-
tory authority to vacate or modify a judgment or order under
§ 25-2001(2) and its equitable power to set aside an order or
judgment.[3] It concluded that none of these grounds applied on
the facts of this case.

The court concluded it could no longer exercise its inher-
ent authority to vacate or modify within its term, because
Jessica's complaint was filed years after the end of the term

---

[2] See, e.g., *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748
N.W.2d 1 (2008) (recognizing district court has virtually unlimited ability
to modify orders during same term).

[3] See *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000)
(holding § 25-2001 is not exclusive remedy for vacating judgment after
term; statute is concurrent with independent equity jurisdiction).

in which the October 2021 order was entered.[4] And although the court acknowledged that § 25-2001(1) extends a district court's inherent power to vacate or modify when a motion is filed within 6 months after the entry of the judgment or order, it found that the extended statutory time period had expired too.

The court also declined to vacate or modify the October 2021 modification order under the statutory authority conferred by § 25-2001(4), reasoning that Jessica's complaint did not cite to or rely upon § 25-2001(4) and that she failed to adduce evidence supporting any of the grounds specified therein.[5] Finally, although the court acknowledged its equitable power to set aside an order or judgment under some circumstances,[6] it declined to exercise that power on the facts of this case.

The district court therefore denied Jessica's complaint and all relief requested therein. Jessica filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Jessica assigns that the district court erred in (1) determining that the October 2021 modification order was a final order, (2) failing to vacate the October 2021 modification order, and (3) failing to determine the October 2021 modification order violated Nebraska public policy and was therefore void.

## III. STANDARD OF REVIEW

[1,2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[7] A

---

[4] See Rules of Dist. Ct. of Fourth Jud. Dist. 4-1(C) (rev. 2022) (term of court for district court for Douglas County begins July 1 of each calendar year and ends June 30 of following calendar year).

[5] See § 25-2001(4)(a) to (g).

[6] See, § 25-2001(2); *Hornig, supra* note 3.

[7] *Hawk v. Hawk, ante* p. 120, ___ N.W.3d ___ (2025).

judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[8]

[3] A district court has inherent power to vacate or modify its own judgments at any time during the term in which those judgments are pronounced, and a decision to modify will be reversed only if the district court abused its discretion.[9]

[4] An appellate court will reverse a decision on a motion to vacate or modify a judgment under the statutory grounds listed in § 25-2001 only if the litigant shows that the district court abused its discretion.[10]

[5] A trial court's decision to vacate or modify based on its equitable jurisdiction is reviewed de novo on the record.[11]

## IV. ANALYSIS

### 1. October 2021 Modification Order Was Final

Before the district court and on appeal, Jessica's primary reason for asking to vacate or amend the October 2021 modification order was her contention that it "was never a final order and [therefore] is subject to being modified or amended."[12] According to Jessica, the 2021 modification order was interlocutory in nature because it did not resolve all the issues raised in the modification pleadings and it "contain[ed] no parenting plan" and "no child support calculation."[13] Based on these contentions, Jessica asks us to "treat that Order as lacking finality and allow additional evidence, mediation, a revised

---

[8] *Id.*

[9] See *id.*

[10] *Nielsen v. Nielsen*, 275 Neb. 810, 749 N.W.2d 485 (2008); *Nye v. Fire Group Partnership*, 263 Neb. 735, 642 N.W.2d 149 (2002).

[11] See *Hornig, supra* note 3.

[12] Brief for appellant at 12.

[13] *Id*. at 9.

parenting plan and/or a trial related to the pleadings."[14] The district court rejected Jessica's contention that the 2021 modification order lacked finality, and so do we.

[6,7] As a general rule, interlocutory orders can be vacated or modified at any time prior to the entry of a final judgment or final order.[15] And we have recognized, as a general principle, that although § 25-2001 governs a district court's power to vacate or modify its judgments or orders after the end of the term, it "does not bar the reconsideration of interlocutory orders"[16] entered in a prior term. Assuming without deciding that interlocutory orders in postdecree custody modification cases are subject to the same general principle, we agree with the district court that the October 2021 order of modification was not interlocutory. The order resolved all disputed issues of custody, parenting time, and child support raised in the relevant modification pleadings, and it did so in accordance with the stipulated agreement of the parties made in open court on the record and subsequently approved by the court as being in the minor child's best interests. The 10-page modification order left no controverted issue unresolved, and it specified clearly the relief granted and orders made,[17] including the specific ways in which the previous custody, parenting plan, and

---

[14] *Id.* at 8.

[15] See *Millard Gutter Co. v. American Family Ins. Co.*, 300 Neb. 466, 915 N.W.2d 58 (2018) (recognizing that order granting partial summary judgment is interlocutory and therefore could be revised or vacated at any time prior to entry of final judgment).

[16] *Whalen v. U S West Communications*, 253 Neb. 334, 349, 570 N.W.2d 531, 542 (1997) (holding that provisions of § 25-2001 do not apply to prevent courts from reconsidering interlocutory orders), *disapproved on other grounds, Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014). Accord, *Godfrey v. Cunningham*, 77 Neb. 462, 465, 109 N.W. 765, 766 (1906) (holding that "an interlocutory order may be vacated at a subsequent term by the same court, without compliance with the provisions of" statute authorizing courts to vacate or modify judgments or orders after end of term).

[17] See Neb. Rev. Stat. § 25-1318 (Cum. Supp. 2024).

child support orders were being modified. Finally, the decretal portion of the 2021 modification order made clear that "unless modified herein, the Decree of Dissolution of Marriage dated September 26, 2017 and Order of Modification dated May 29, 2020 shall remain in full force and effect."

We are puzzled by Jessica's contention that the 2021 modification order did not contain a parenting plan, particularly since it is the parenting plan provisions of that order which she seeks to vacate or modify. The original 2017 dissolution decree included a court-approved parenting plan that remains in full force and effect, as modified by the 2020 and 2021 modification orders. In connection with the 2021 modification, either the parties or the court could have elected to prepare an updated parenting plan document that combined all the provisions then in effect into a single document, but the failure to do so did not affect the finality of the modification order. Similarly, on this record, the finality of the modification order was not affected by the failure to attach a child support "worksheet 5,"[18] reflecting the court-approved downward deviation under which neither party owed support.

The district court did not err in refusing to characterize the 2021 modification order as interlocutory in nature or in refusing Jessica's request to vacate or modify the order on that basis.

## 2. District Court Properly
### Refused to Vacate

In her second assignment, Jessica broadly contends the district court erred in refusing to vacate the October 2021 modification order. She generally argues that the order was "so replete with errors and vagueness that it should not be allowed to stand,"[19] but she does not mention or discuss the

---

[18] See, e.g., Neb. Ct. R. § 4-203 (rev. 2020) ("[i]n the event of a deviation, the reason for the deviation shall be contained in the findings portion of the decree or order, or worksheet 5 should be completed by the court and filed in the court file").

[19] Brief for appellant at 13.

sources of a district court's legal authority to vacate or modify a prior judgment or order. We begin our analysis there.

First, we observe that in the instant proceeding, Jessica was not seeking to modify the custody or parenting time provisions of the 2021 order based on allegations of a material change in circumstances affecting the child's best interests since the last modification.[20] Instead of relying on the modification procedures in the divorce statutes and the Parenting Act,[21] Jessica asked the district court to vacate or modify the 2021 order using its other sources of authority.

As we recently noted in *Hawk v. Hawk*,[22] a district court generally has four sources of authority to vacate or modify a judgment or final order: one founded purely on the court's inherent powers,[23] two having statutory bases,[24] and one grounded in the power of a court of equity.[25] In the sections that follow, we review all these sources of authority and ultimately conclude the district court did not err in refusing to vacate or modify the October 2021 order.

### (a) Court's Inherent Authority

[8] Since at least 1899, Nebraska has recognized that courts of general jurisdiction possess the inherent power to vacate and modify their own judgments at any time during the term at which they were pronounced.[26] This inherent power is

---

[20] See Neb. Rev. Stat. § 42-364(6) (Cum. Supp. 2024). See, also, *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021) (orders of custody and parenting time will not be modified absent proof of material change in circumstances since last modification that affects child's best interests).

[21] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2024).

[22] *Hawk, supra* note 7.

[23] See *Johnson v. Antoniutti*, 318 Neb. 465, 16 N.W.3d 864 (2025).

[24] See § 25-2001(1) and (4).

[25] See, e.g., *Hornig, supra* note 3; *Joyce v. Joyce*, 229 Neb. 831, 429 N.W.2d 355 (1988).

[26] See *Bradley v. Slater*, 58 Neb. 554, 78 N.W. 1069 (1899).

derived from the common law, and it exists entirely independent of any statute.[27] While this power is broad, it is well settled that it ends at the conclusion of the court term in which the judgment or order is entered.[28]

As a court of general jurisdiction, the district court plainly possessed the inherent power to modify within its term.[29] But the court term within which the October 2021 modification order was entered ended long before Jessica filed her complaint to vacate.[30] The district court therefore correctly determined that it could no longer exercise the inherent authority to vacate that order.

### (b) Statutory Authority

Section 25-2001 also addresses a court's authority to vacate or modify it judgments and orders, and it provides in relevant part:

(1) The inherent power of a district court to vacate or modify its judgments or orders during term may also be exercised after the end of the term, upon the same grounds, upon a motion filed within six months after the entry of the judgment or order.

(2) The power of a district court under its equity jurisdiction to set aside a judgment or an order as an equitable remedy is not limited by this section.

. . . .

(4) A district court may vacate or modify its own judgments or orders after the term at which such judgments

---

[27] See *id.*

[28] See, e.g., *Hawk, supra* note 7; *Eicher, supra* note 2; *Bradley, supra* note 26. See, also, *Ballheim v. Settles*, 318 Neb. 873, 19 N.W.3d 748 (2025) (recognizing general rule that judgment is not open to amendment, revision, modification, or correction after term at which it was rendered).

[29] See *Hawk, supra* note 7.

[30] See Rules of Dist. Ct. of Fourth Jud. Dist. 4-1(C) (term of court for district court for Douglas County begins July 1 of each calendar year and ends June 30 of following calendar year).

or orders were made (a) for mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order; (b) for fraud practiced by the successful party in obtaining the judgment or order; (c) for newly discovered material evidence which could neither have been discovered with reasonable diligence before trial nor have been discovered with reasonable diligence in time to move for a new trial; (d) for erroneous proceedings against an infant or person of unsound mind if the condition of such defendant does not appear in the record of the proceedings; (e) for the death of one of the parties before the judgment in the action; (f) for unavoidable casualty or misfortune, preventing the party from prosecuting or defending; and (g) for taking judgments upon warrants of attorney for more than was due to the plaintiff when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

To the extent § 25-2001(1) extends the court's inherent power to vacate or modify beyond the end of a court term where the party's motion is filed within 6 months after the entry of the judgment or order at issue, the district court correctly determined that such time period had expired long before Jessica filed her motion/complaint in this case.

Section 25-2001(4) authorizes a district court to vacate or modify a judgment or order after the conclusion of the court term for any of seven different reasons. But here, the district court declined to exercise that authority, reasoning that Jessica's complaint did not expressly cite to or rely upon § 25-2001(4), and, in any event, she failed to adduce evidence supporting any ground specified therein.[31] We see no abuse of discretion in this ruling, but point out there is an additional reason that the court correctly declined to exercise authority under § 25-2001(4).

---

[31] See § 25-2001(4)(a) to (g).

Although not addressed by the parties or the district court, there is a statutory time limit on requests to vacate or modify judgments or orders under § 25-2001(4). Neb. Rev. Stat. § 25-2008 (Reissue 2016) states that proceedings to vacate or modify a judgment or order under § 25-2001(4) "must be commenced no later than two years after the entry of the judgment or order unless the party entitled thereto is an infant or person of unsound mind, and then no later than two years after removal of such disability."

Here, there was no claim or evidence that Jessica was a person of unsound mind at any point in these proceedings. And by the time she filed her complaint to vacate or modify in 2024, more than 2 years had passed since the entry of the October 2021 modification order. Because the 2021 modification order was no longer subject to being vacated or modified on any of the grounds specified in § 25-2001(4), the district court did not abuse its discretion in refusing to exercise authority under § 25-2001(4).

### (c) Court's Equitable Power

[9] The final source of a district court's power to modify or vacate a judgment or order is its equitable jurisdiction.[32] Although § 25-2001(2) expressly recognizes this equitable authority, our cases have long held that a court's equity jurisdiction to vacate or modify is not dependent upon § 25-2001; rather, § 25-2001 "'is concurrent with an independent equity jurisdiction.'"[33]

[10] As a general rule, for a district court to exercise its equitable jurisdiction, there must be a showing that there is no

---

[32] See, *Hawk, supra* note 7; *Hornig, supra* note 3.

[33] *Hornig, supra* note 3, 258 Neb. at 772, 606 N.W.2d at 771 (quoting *Emry v. American Honda Motor Co.*, 215 Neb. 435, 334 N.W.2d 786 (1983)). See *Joyce, supra* note 25. See, also, § 25-2001(2) (stating "[t]he power of a district court under its equity jurisdiction to set aside a judgment or an order as an equitable remedy is not limited to this section"); John P. Lenich, Nebraska Civil Procedure § 35:15 (2025).

adequate remedy at law.[34] In *Hornig v. Martel Lift Systems*,[35] we observed the maxim that "equity aids the vigilant and the diligent, not those who sleep on their rights," and we questioned whether a party could make the requisite showing that no adequate remedy at law exists if the evidence showed that the party either failed to institute proceedings under § 25-2001 within the statutory limitation period or that the party could have proceeded under § 25-2001 but did not do so "because of fault or laches."[36]

Here, Jessica failed to institute proceedings under § 25-2001 within the applicable 2-year limitation period in § 25-2008, and that is a factor we consider in our independent de novo review of whether Jessica was entitled to have the 2021 modification order vacated or modified under the district court's independent equitable jurisdiction. But in addition to this delay, our de novo review of the record leads us to the same conclusion reached by the district court: Equity does not support Jessica's request to vacate or modify the 2021 modification order.

Jessica was represented by counsel when she agreed to resolve the modification proceedings by agreement, and the terms of that agreement were recited on the record in open court and affirmed by the parties under oath. The stipulated agreement included modifications to the legal and physical custody of the parties' minor child, modifications to Jessica's parenting time, and modifications to child support. The 2021 order of modification reflected the parties' stipulated agreement, and both the form and content of the order was approved by Jessica, who expressly asked the court to enter the order and certified that it "has not been obtained by duress, fraud, or undue influence."

---

[34] See *Hornig, supra* note 3.

[35] *Id*., 258 Neb. at 770, 606 N.W.2d at 770.

[36] *Id.* at 773, 606 N.W.2d at 771.

On this record, Jessica failed to establish any basis for the district court to exercise its equity jurisdiction to vacate or modify the 2021 modification order.

### (d) Summary

In sum, by the time Jessica filed her complaint to vacate the 2021 modification order, the district court's inherent power to vacate the order had expired, as had any statutory extension of inherent authority extended by § 25-2001(1). Moreover, the 2-year limitation period had expired for seeking to vacate or modify the order under § 25-2001(4), and Jessica failed to establish any reason for the district court to exercise its equity jurisdiction to vacate or modify the 2021 modification order.

There is no merit to Jessica's assignment that the district court erred by failing to vacate or modify the 2021 modification order.

### 3. Voidness Not Raised Below

In her third assignment, Jessica argues that the district court erred in failing to vacate the 2021 modification order on grounds it was "void."[37] Importantly, Jessica does not contend the order was void because the district court lacked jurisdiction over the parties or the subject matter.[38] Instead, she argues the order was void because it "should be determined to violate Nebraska public policy"[39] for several reasons, including that it "severely limited her parenting time."[40]

[11] Matthew responds that we need not address this issue because Jessica is raising it for the first time on appeal. We agree. Jessica's complaint to vacate or modify contained no allegation that the 2021 modification order was void as

---

[37] Brief for appellant at 13.

[38] See *Parish v. Parish*, 314 Neb. 370, 991 N.W.2d 1 (2023) (judgment entered by court that lacked jurisdiction over either parties or subject matter is void and can be attacked at any time).

[39] Brief for appellant at 13.

[40] *Id*. at 14.

against public policy, and she presented no such argument before the district court. Because an appellate court will not consider an argument or theory raised for the first time on appeal,[41] we do not further address this assignment.

## V. CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.

---

[41] *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023).