IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

HARRIFELD V. STRUMPHER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

EMILY M. HARRIFELD, APPELLEE,

V.

EUGENE STRUMPHER, APPELLANT.

Filed April 28, 2026.    No. A-25-544.

Appeal from the District Court for Webster County: TIMOTHY E. HOEFT, Judge. Affirmed.

Shon T. Lieske, of Lieske, Lieske & Ensz, P.C., L.L.O., for appellant.

Robert J. Parker, Jr., of Sieler & Parker, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

The Webster County District Court entered a decree annulling the marriage of Eugene Strumpher, a citizen of South Africa, and Emily M. Harrifeld. The decree adopted a "Property Settlement Agreement" executed by the parties. The agreement contained a stipulation that the parties' marriage was induced by Eugene's fraudulent intent to obtain United States citizenship. Eugene subsequently filed a motion to vacate the decree, claiming he was unaware of the consequences that an annulment of marriage could have on his immigration status. Citing a lack of evidence, the district court declined to vacate or otherwise alter its decree. On appeal, Eugene argues the court abused its discretion. We affirm.

- 1 -

## II. BACKGROUND

Eugene married Emily on September 3, 2021, in Lincoln, Nebraska. According to Eugene's appellate brief, after the marriage, he lawfully obtained permanent resident status in the United States. One child was born to the couple in 2023.

On January 30, 2025, Emily, through counsel, filed a complaint in the district court, setting forth two causes of action. Her first cause of action was for "Annulment." Emily alleged that she was "induced to enter into the marriage through fraud." She claimed that Eugene contracted the marriage "solely for the purpose of furthering his effort to stay in the United States" and pursue citizenship. Emily's second cause of action alternatively sought "Dissolution of Marriage." Eugene, unrepresented by counsel, filed a voluntary appearance with the court on February 2. He acknowledged receipt of Emily's complaint and waived service of process. At no point in the proceedings below did Eugene retain counsel to represent him in connection with the annulment action. However, the record suggests that Eugene did have an attorney for matters related to his immigration status.

The parties subsequently executed a "Property Settlement Agreement" on April 28, 2025. The agreement was drafted by Emily's counsel and addressed, among other things, the division of property and debts, child custody and support, alimony, and the allocation of other expenses. Pertinent to this appeal, the agreement contained the following stipulation:

> 2. <u>STIPULATION TO ANNULMENT</u>: The parties stipulate and agree that the allegations of [Emily]'s Complaint seeking an annulment of the parties' purported marriage are true and correct, and the District Court of Webster County, Nebraska should enter a Decree of Annulment in accordance with the allegations of [Emily]'s Complaint.

The document also "certifie[d]" that each party entered into the agreement "upon mature consideration and after ample opportunity to seek [the] advice of separate counsel" and that consent to the agreement was not procured by "duress, fraud or undue influence." Eugene and Emily initialed all pages of the document, and their notarized signatures appeared at the bottom of the agreement. The agreement contained a disclaimer written in bold typeface, emphasizing that Emily's counsel had no attorney-client relationship with Eugene and solely represented the interests of Emily.

On April 29, 2025, the district court entered a "Decree of Annulment." According to the court, a "verified Certificate of Waiver of Hearing" was signed and filed by both parties. The court concluded there was "cause" for the marriage between Eugene and Emily to be annulled "on the grounds of fraud," pursuant to Neb. Rev. Stat. § 43-374(4) (Reissue 2016). It declared the marriage "null and void and of no force and effect." The court adopted the terms of the parties' property settlement agreement, finding its provisions "fair and reasonable" and in the best interests of their minor child.

Seventeen days after the district court entered the decree of annulment, Eugene filed a motion to vacate. In the motion, Eugene requested that the court set aside its decree "for the reason that [he] was unrepresented and did not fully understand the extent of what [he] was agreeing to when [he] entered into the settlement agreement." A hearing on Eugene's motion was conducted on June 11, 2025. Eugene appeared virtually and stated he "didn't really understand" "the meaning

of the annulment" when he signed the property settlement agreement. He requested that the court "change the annulment to a divorce decree" and "reopen" the case to allow his "[immigration] attorney to just go over [] everything with" him. Eugene explained that if the annulment of marriage was allowed to stand, he could "lose [his] green card citizenship," preventing him from being "able to see [his] daughter again." He offered no evidence to support his assertions. In response, Emily directed the court to the first page of the parties' agreement. She noted that it "clearly stated" a complaint for annulment of marriage premised upon Eugene's fraud was filed. Upon inquiry by the court, Eugene conceded that he "read through" the agreement and "signed everything," but he nonetheless "did not understand the annulment situation."

The district court "specifically" took judicial notice of the decree of annulment, Emily's complaint, Euguene's voluntary appearance, and "all of the pleadings contained in" its file. The matter was then taken under advisement.

On June 16, 2025, the district court entered an order denying Eugene's motion to vacate. In its order, the court first acknowledged that Neb. Rev. Stat. § 25-2001 (Reissue 2016) authorized it "to vacate or modify its own judgments or orders both during and after the term at which such judgments or orders were made." It also pointed out that the decree of annulment was entered "upon the filing of a stipulated property settlement agreement and parenting plan by the parties," and that the parties waived a hearing and requested the decree be entered in accordance with the stipulated documents. "[Eugene] now argues that the agreement was entered into by mistake and induced by misunderstanding or by fraud." Rejecting these assertions, the court first observed that the "standards for showing fraud or irregularity in obtaining the judgment in an effort to vacate a judgment is high." It noted that although Eugene claimed he did not understand the term "annulment and thought than an annulment and a divorce were one in the same," he "offered no evidence or exhibits to support his position or to support that the agreement was induced by fraud." Further, the complaint was for an annulment, and "the stipulated agreement mentions the word annulment numerous times." The court stated that Eugene's "primary reason" for vacating the decree is that the annulment was causing him immigration issues. It then reasoned:

> The Court notes that in the agreement that was signed by the parties, the parties acknowledged that they were given the opportunity to consult with counsel and that they understood the terms and conditions of the agreement. The Court notes that [Eugene] was appearing at the [motion to vacate] hearing via Zoom, and therefore he had access to the internet and could have easily searched the definition of the word annulment if he was unsure of its meaning. The Court notes that there is a difference between not knowing the definition or meaning of a term and not understanding the consequences of entering into such an agreement. Nonetheless, [Eugene] has failed to offer any evidence to support or carry the burden to justify the Court vacating its [decree].

Eugene, through counsel, appeals.

## III. ASSIGNMENTS OF ERROR

Eugene assigns that the district court erred in (1) denying his motion to vacate under § 25-2001(4) on "grounds of mistake, irregularity, or fraud"; (2) concluding his lack of understanding as to the meaning and legal consequences of annulment was not a sufficient reason

- 3 -

to grant his motion; and (3) failing to consider various "equitable circumstances," such as his limited English, cultural background, and "severe immigration consequences resulting from the annulment."

## IV. STANDARD OF REVIEW

A district court has inherent power to vacate or modify its own judgments at any time during the term in which those judgments are pronounced, and a decision to modify will be reversed only if the district court abused its discretion. *Jaksha v. Jaksha*, 319 Neb. 308, 21 N.W.3d 690 (2025). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. Power of District Court to Vacate and Modify Judgments

A district court generally has four sources of authority to vacate or modify a judgment or final order: one founded purely on the court's inherent powers, two having statutory bases, and one grounded in the power of a court of equity. See *Hawk v. Hawk*, 319 Neb. 120, 21 N.W.3d 303 (2025). Eugene broadly intimates that several of these bases of authority are germane to this case. For example, in his first assignment of error, Eugene alleges that the court erred "in denying [his] motion to vacate under . . . § 25-2001(4)." Brief for appellant at 6. Elsewhere in his brief, he argues that the court's "inherent authority" and "its equitable authority" are similarly implicated. *Id.* at 13. As such, before addressing the merits of Eugene's appeal, we find it necessary to set forth the contours of a district court's authority to vacate or otherwise modify its judgments or orders.

### (a) District Court's Inherent Authority

Since at least 1899, Nebraska has recognized that courts of general jurisdiction possess the inherent power to vacate and modify their own judgments at any time during the term at which they were pronounced. *Jaksha v. Jaksha, supra*. This inherent power is derived from the common law, and it exists entirely independent of any statute. *Id.* While this power is broad, it is well settled that it ends at the conclusion of the court term in which the judgment or order is entered. *Id.*

As a court of general jurisdiction, the district court plainly possessed the inherent power to vacate or modify its judgments or orders within its term. See *id.* Here, the court's decree of annulment was entered on April 29, 2025, Eugene filed his motion to vacate on May 16, and the court denied Eugene's motion on June 16. These events all took place during the same term of court. See Rules of Dist. Ct. of 10th Jud. Dist. 10-1 (rev. 2010) (two terms of court held in each district court in Tenth Judicial District; spring term commences on date in March and fall term commences on date in August or September). Thus, the court had the inherent power to entertain Eugene's request to vacate the decree of annulment.

### (b) District Court's Statutory Authority

Section 25-2001 also addresses a district court's authority to vacate or modify its judgments and orders, and it reads, in pertinent part:

(1) The inherent power of a district court to vacate or modify its judgments or orders during term may also be exercised after the end of the term, upon the same grounds, upon a motion filed within six months after the entry of the judgment or order.

(2) The power of a district court under its equity jurisdiction to set aside a judgment or an order as an equitable remedy is not limited by this section.

. . . .

(4) A district court may vacate or modify its own judgments or orders after the term at which such judgments or orders were made (a) for mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order; (b) for fraud practiced by the successful party in obtaining the judgment or order; (c) for newly discovered material evidence which could neither have been discovered with reasonable diligence before trial nor have been discovered with reasonable diligence in time to move for a new trial; (d) for erroneous proceedings against an infant or person of unsound mind if the condition of such defendant does not appear in the record of the proceedings; (e) for the death of one of the parties before the judgment in the action; (f) for unavoidable casualty or misfortune, preventing the party from prosecuting or defending; and (g) for taking judgments upon warrants of attorney for more than was due to the plaintiff when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

To the extent that § 25-2001(1) extends the district court's inherent power to vacate or modify beyond the end of a court term where the party's motion is filed within 6 months after the entry of the judgment or order at issue, it is inapplicable in this case. As previously stated, the court's decree and its order denying Eugene's motion to vacate were all entered within the same term of the court.

Section 25-2001(4), which both parties on appeal discuss and cite to in their briefing, is similarly inapplicable. This statutory provision authorizes a district court to vacate or modify a judgment or order after the conclusion of the court term for any of the seven different reasons enumerated. See § 25-2001(4). Since the plain language of § 25-2001(4) applies when vacation or modification is sought "*after the term* at which such judgments or orders were made," it is not implicated in this case. (Emphasis supplied.) See, also, *Hartman v. Hartman*, 265 Neb. 515, 657 N.W.2d 646 (2003) (section 25-2001(4) plainly applies to modification or vacation of judgment after term of court at which it was entered).

### (c) District Court's Equitable Authority

The final source of a district court's power to modify or vacate a judgment or order is its equitable jurisdiction. *Jaksha v. Jaksha, supra*. Although § 25-2001(2) expressly recognizes this equitable authority, the Nebraska Supreme Court has long held that a court's equity jurisdiction to vacate or modify is not dependent upon statute. See *Jaksha v. Jaksha, supra*. Rather, § 25-2001 "is concurrent with an independent equity jurisdiction." *Emry v. American Honda Motor Co.*, 214 Neb. 435, 447, 334 N.W.2d 786, 794 (1983). However, as a general rule, for a district court to exercise its equitable jurisdiction, there must be a showing that there is no adequate remedy at law. *Jaksha v. Jaksha, supra*. The term "adequate remedy at law" refers to a remedy which is plain and complete, and as practical and efficient to the ends of justice as is the equitable remedy. *Hornig v.*

*Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000). Thus, in order to be an adequate remedy at law, the remedy must presently exist. *Id.*

In this case, a present remedy exists, in that the district court had the inherent authority to vacate or modify its decision since Eugene's motion was filed within the same term that the decision was rendered. See *Jaksha v. Jaksha, supra*. It therefore had the "equitable power to vacate a judgment during the term in which it was entered on grounds which include, but are not limited to, those enumerated in § 25-2001(4)." *Hartman v. Hartman*, 265 Neb. 515, 519, 657 N.W.2d 646, 649 (2003) (finding no abuse of discretion in trial court's denial of former wife's motion to vacate marriage dissolution decree filed within same term based on her claim that guardian ad litem should have been appointed for her given her mental illness).

Because the district court's inherent power to vacate or modify its decision within the same term is an available remedy here, all of the grounds asserted by Eugene in support of vacating the decree of annulment can be considered under that inherent authority.

## 2. INHERENT POWER TO VACATE

The decision to vacate an order within the same term is within the discretion of the trial court, and the decision will be upheld absent an abuse of discretion. See *Hartman v. Hartman, supra.*

Eugene argues that the decree of annulment was procured through mistake, fraud, and irregularity. He also claims that his lack of knowledge as to the legal definition of annulment and the potential immigration consequences stemming from his misunderstanding negated his consent to the property settlement agreement.

In its order denying Eugene's motion to vacate, the district court acknowledged Eugene's "argu[ment] that the agreement was entered into by mistake and induced by misunderstanding or by fraud." However, it stated, "[t]he standards for showing fraud or irregularity in obtaining the judgment in an effort to vacate a judgment is high," and "[t]he burden of proof lies with the party seeking to vacate the order." The court concluded that Eugene did not carry his burden of proving fraud because he "offered no evidence or exhibits to support his position."

As the district court correctly noted, the standard for proving fraud in the context of a motion to vacate is high. See *State v. Bartel*, 308 Neb. 169, 953 N.W.2d 224 (2021). Here, as the court explained in its order, Eugene offered no evidence at the hearing to support a cognizable claim of fraud. In his brief, Eugene generally asserts that Emily engaged in "constructive fraud" because the agreement executed was "complex" and her complaint pled alternative legal theories. Brief for appellant at 11. We are unconvinced by these claims. Regarding Eugene's latter point, a party is expressly permitted to plead "alternative or different types of relief." Neb. Ct. R. Pldg. § 6-1108(a)(3) (rev. 2025). As such, the mere fact that Emily's complaint sought an annulment of marriage while simultaneously requesting a dissolution of marriage does not constitute fraud. Similarly, the record shows that Eugene voluntarily entered into the agreement, despite many warnings of the document's legal import. The agreement clearly indicated that each person was "aware of his and her right to be represented by legal counsel and [] had full opportunity to seek counsel." Elsewhere in the document, it was "certifie[d]" that each party had "ample opportunity to seek [the] advice of separate counsel." These recitals put Eugene on notice of the document's legal significance. However, notwithstanding these warnings, Eugene's initials appear on each

page of the document, and his notarized signature can be found at the bottom of the agreement. Eugene also asserts Emily fraudulently took advantage of his "limited English proficiency." Brief for appellant at 16. Again, no evidence to support this claim was offered to the trial court, and the record at large contains no indication that Eugene had trouble understanding the proceedings against him or that he requested translation assistance.

Nor are we persuaded that the district court abused its discretion concerning Eugene's purported misunderstanding of the meaning of an annulment and its potential effect on his immigration status. Eugene argues there was a "fundamental misunderstanding of the effect of an annulment," and the court's decree, as currently constituted, renders him "deportable." Brief for appellant at 14. Eugene asserts that he will be "forced to return to South Africa," frustrating other portions of the court's decree which contemplate "regular and frequent parenting time," "monthly child support," and "involvement in his daughter's activities." *Id.* However, while we recognize Eugene's potential predicament, these immigration consequences are speculative at this juncture. No evidence was offered to support these assertions of possible deportation. As the trial court explained:

> The Court notes that there is a difference between not knowing the definition or meaning of a term and not understating the consequences of entering into such an agreement. Nonetheless, [Eugene] has failed to offer any evidence to support or carry the burden to justify the Court vacating its [decree].

Due to the general lack of evidence to support Eugene's claims, we cannot say the district court abused its discretion in denying his motion to vacate.

## VI. CONCLUSION

For the reasons explained above, we affirm the district court's order denying Eugene's motion to vacate the April 29, 2025, decree of annulment.

AFFIRMED.